**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

```
_____
                               )
ESTELLA PAGE, et al.,          )
                               )
        Plaintiffs,            )
                               )
        v.                     )    Civil Action No. 89-2997 (RWR)
                               )
PENSION BENEFIT GUARANTY       )
CORPORATION,                   )
                               )
        Defendant.             )
_____)
```

**MEMORANDUM OPINION AND ORDER**

Plaintiffs, class representatives, brought this action against defendant Pension Benefit Guaranty Corporation ("PBGC") claiming that PBGC failed to provide benefits to participants in terminated pension plans as was required under the Employee Retirement Income Security Act ("ERISA").  After the parties reached a settlement, PBGC moved to end the implementation of that settlement and, in response, plaintiffs moved for the referral of outstanding administrative issues to a jointly created settlement board.  PBGC seeks reconsideration of the magistrate judge's decision to grant plaintiffs' motion and deny without prejudice PBGC's motion.  Because referral of the pending administrative issues to the jointly established settlement board is appropriate and is neither clearly erroneous nor contrary to law, PBGC's motion for reconsideration will be denied.

-2-

BACKGROUND

This case involves the settlement of two class action lawsuits filed in 1988 and 1989 concerning termination of pension plans. (See Mot. for Recons. 3.) In 1996, after litigation and negotiation, the parties entered into a Settlement Agreement. (See id.) The Settlement Agreement provided for a Settlement Director to implement and manage certain aspects of the settlement, as well as a Class Action Settlement Board ("CASB") -- composed of two counsel for plaintiffs, two PBGC representatives, and one lawyer in private practice -- to oversee the work of the Settlement Director. (See id.) The Settlement Director was to locate, process, and pay as many eligible class members as possible during a 36-month implementation period. (See Mot. for Recons., Ex. 2, Settlement Agreement § 18.2.) After twice extending the implementation period, the implementation period ended August 31, 2002. (See Mot. for Recons. 3-4 n.2.)

As the end of the settlement implementation period approached, the parties executed a Wrap Up Agreement which set terms for ending the settlement and made several changes to the Settlement Agreement. (See id.) The Wrap Up Agreement provided for "shut down of the substantive work of the Settlement Director by August 31, 2002, and for the CASB to disband by December 31, 2002." (See id. at 5 (citing Mot. for Recons., Ex. 3, Wrap Up

-3-

Agreement ("Wrap Up Agreement") at 1, 2).)  PBGC claims that during this four-month period, the CASB was limited to "conducting a final audit of the CASB's operations, reconciliation of trust and checking accounts, transfer of files and documents, and the submission of a final report to the U.S. District Court."  (Mot. for Recons. 5; see Wrap Up Agreement at 10-11.)

On December 16, 2002, in accordance with the Wrap Up Agreement, the parties submitted their Final Report to the Court. (See Cross Mot. to Enforce Settlement Agreement, Ex. 1, Joint Notice of Filing of Final Report for Order of Discharge ("Final Report").)  During this time, the Settlement Director ceased work and remaining claims were being processed through the PBGC's Pension Search Program ("PSP").  According to PBGC, all that remained for the parties was to "dismantle the administrative machinery."[1]  (Mot. for Recons. at 6.)  The CASB was to complete its tasks and cease operations by March 31, 2003.  (See Final Report at 16-17.)

Although the completion of the tasks proceeded in a timely manner, PBGC alleges that plaintiffs' counsel "subsequently refused to work on the final close out tasks."  (Mot. for Recons.

---

[1] The administrative tasks included sending documents to storage, reconciling and closing accounts, completing audits, and distributing remaining amounts of settlement funding in part to PBGC and in part to a Contingent Distribution Reserve.  (See Mot. for Recons. at 6.)

at 6.)  Thereafter, PBGC contacted plaintiffs' counsel "seeking their agreement to execute five concrete tasks necessary for close out."  (Id. at 7.)  PBGC alleges that plaintiffs responded, but "fail[ed] to address the specifics of a close out at all." (Id.)

As a result, PBGC filed a motion to close out the settlement.  In response, plaintiffs filed a cross-motion to refer administrative issues to the joint settlement board.  The magistrate judge granted plaintiffs' motion for referral of issues to the CASB and denied PBGC's motion without prejudice. (See Mem. Order. of Feb. 25, 2005.)  PBGC now moves for reconsideration of that order.

## DISCUSSION

Fed. R. Civ. P. 72(a) and LCvR 72.2(b) allow a party to seek reconsideration of a magistrate judge's decision on a nondispositive matter.  "On review, the magistrate judge's decision is entitled to great deference unless it is clearly erroneous or contrary to law, that is, if on the entire evidence the court is left with the definite and firm conviction that a mistake has been committed."  Pulliam v. Cont'l Cas. Co., Civil Action No. 02-370 (RWR), 2006 WL 3003977, at *2 (D.D.C. Oct. 20, 2006) (citing Virtual Def. & Dev. Int'l, Inc. v. Rep. of Mold., 133 F. Supp. 2d 9, 20 (D.D.C. 2001) (quoting Neuder v. Battelle Pac. Nw. Nat. Lab., 194 F.R.D. 289, 292 (D.D.C. 2000))) (internal

quotations omitted); see also LCvR 72.2(c) ("Upon a motion for reconsideration . . . a judge may modify or set aside any portion of a magistrate judge's order . . . found to be clearly erroneous or contrary to law."). By contrast, a magistrate judge's opinion in a dispositive matter is reviewed de novo. See Fed. R. Civ. P. 72(b).

PBGC argues that its motion to close out settlement should be considered a dispositive motion under 28 U.S.C. § 636(b)(1)(A), thereby warranting de novo review of the magistrate judge's decision. While some courts have held that § 636(b)(1)(A) enumerates a non-exhaustive list of dispositive motions for which a magistrate judge may not issue rulings, see, e.g., Vogel v. U.S. Office Products Co., 258 F.3d 509, 515 (6th Cir. 2001) (explaining that "unlisted motions that are functionally equivalent to those listed . . . are also considered dispositive"), PBGC cites to no authority stating that a motion of the sort decided by the magistrate judge here is one that should be included under § 636(b)(1)(A) and the District of Columbia Circuit has not indicated what motions, if any, beyond those enumerated should be considered dispositive. However, PBGC contends that the standard of review relied upon is not critical because the magistrate judge's decision should be overturned as it is also clearly erroneous and contrary to law. Under either standard, the plaintiffs prevail, as is discussed below.

-6-

II. CASB'S JURISDICTION

PBGC claims that the magistrate judge granted the CASB jurisdiction over the PSP under the Wrap Up Agreement, to PBGC's prejudice. PBGC argues that this was error and that the magistrate judge misunderstood the plain language of the Wrap Up Agreement, ignored the remedy the parties chose and substituted CASB review in its place, misinterpreted the Settlement Agreement, and misinterpreted federal law.

A. Plain language

In ordering that the pending administrative issues related to the parties' compliance with the Wrap Up Agreement be referred to the CASB, the magistrate judge found that "the parties agree[d] that they provided for the formation of the CASB to oversee the work of the Settlement Director." (Mem. Order of Feb. 25, 2005 at 2.) PBGC contends that the magistrate judge misunderstood the plain language of the Wrap Up Agreement and erred by granting the CASB authority to oversee PBGC and its implementation of the Wrap Up Agreement. (Mot. for Recons. at 13.) PBGC argues that the Wrap Up Agreement specified "both jurisdictional and temporal limits on the CASB" and "did not grant any authority to the CASB to supervise PBGC." (Id. at 12.) Further, PBGC claims that the Close-Out Section of the Wrap Up Agreement explained "that the operations of the CASB would cease

-7-

four months after Pension Search (but under no condition later than 12/31/02)."  Id.

The Wrap Up Agreement was jointly filed by the parties as an amendment to the Settlement Agreement.  (See Reply to Opp'n to Pls.' Cross Mot. To Enforce Settlement Agree., Attach. 1, Joint Notice of Filing of Wrap Up Agree. at 2.)  While PBGC claims that the Wrap Up Agreement required that the CASB cease operations no later than December 31, 2002, that conclusion was "conditioned upon a Court order discharging the CASB and each of its members and the Settlement Director from any and all obligations under the Settlement Agreement or otherwise arising from this litigation."  (Wrap Up Agreement at 11.)  In order to obtain this order, the parties were responsible for filing "a joint request for an order of discharge simultaneously with the final report to the Court."  (Id.)

In their request for an order of discharge, the parties sought termination of the CASB following the completion of certain tasks that the parties identified in their jointly filed Final Report and after the CASB had filed its 2001 and 2002 financial statements without problem.  (See Final Report at 19.)  However, PBGC agrees that at least five of these tasks have not been completed.  (See PBGC's Mem. in Support of its Mot. to Close Out Settlement & Opp'n to Pls.' Cross Mot. to Enforce Settlement Agreement at 5-6.)  As such, PBGC has not established how

-8-

referring administrative issues to the CASB related to the parties' compliance with their agreements is either unwarranted or is erroneous or contrary to law or the plain language of the those agreements.

    B.   <u>Parties' chosen remedy</u>

While PBGC alleges that the parties "specifically designated the [Administrative Procedures Act ("APA")] as the framework for handling disputes regarding Pension Search in the Wrap Up Agreement" (Mot. for Recons. at 14), the Wrap Up Agreement merely provides a limited right of appeal under the APA for individual class members.  (<u>See</u> Wrap Up Agreement at 10.)  It says nothing about the APA being a mechanism by which the parties are to resolve disputes arising under that agreement.  No such conclusion is warranted, and the magistrate judge's failure to find that the APA was the sole method for the parties to address disagreements under the Wrap Up Agreement was neither clearly erroneous nor contrary to law.

    C.   <u>Settlement agreement</u>

PBGC also argues that the magistrate judge erred in finding that the Settlement Agreement granted authority to the CASB over PBGC's operations post-settlement.  (<u>See</u> Mot. for Recons. at 15.) Plaintiffs dispute this allegation by noting that several documents and judicial orders provide CASB with authority to oversee this stage of the settlement.  (<u>See</u> Pls.' Mem. of P. & A.

-9-

in Opp'n to PBGC's Mot. for Recons. ("Pls.' Opp'n") at 10-11.) As is stated above, it is clear from the jointly filed Final Report that the CASB was charged with the responsibility to oversee the completion of several administrative tasks, which PBGC concedes have yet to be concluded.  Moreover, the magistrate judge did not err or act contrary to law by referring the pending administrative issues to the CASB.

    D.   Application of federal law

As a federal agency, PBGC claims that principles of separation of powers prevent a judge from allowing a third-party to monitor PBGC's activities without its consent.  (See Mot. for Recons. at 16.)  In support of its argument, PBGC relies heavily on Cobell v. Norton,[2] for the proposition that federal courts "must be extraordinarily careful in imposing outside parties to monitor the internal operations of a federal agency and should not do so at all without the agency's consent or specific judicial findings of violations that are appropriate for monitoring."  (Mot. for Recons. at 17.)  However, PBGC's reliance on the Cobell opinions is misplaced in two respects.

First, the type of oversight powers granted to the court monitors in both Cobell I and Cobell II far exceeded the duties of the CASB recognized by the magistrate judge in this case.  The

---

    [2] PBGC cites two separate Cobell decisions -- 334 F.3d 1128 (D.C. Cir. 2003) ("Cobell I") and 392 F.3d 461 (D.C. Cir. 2004) ("Cobell II").

-10-

Cobell court was concerned about the ability of court monitors who served in an investigative, rather than in a strictly judicial capacity. The type of authority exercised by the CASB here appears quite similar to the authority granted to the court-appointed special master in Ruiz v. Estelle, 679 F.2d 1115 (5th Cir. 1982), which the Cobell court distinguished. In Ruiz, the use of a special master under Federal Rule of Civil Procedure 53 and several monitors to handle compliance and implementation of the settlement agreement was upheld. Ruiz, 679 F.2d at 1161-62. Here, the magistrate judge made a referral to the CASB for the sole purpose of determining "the pending administrative issues related to the parties' compliance with the Wrap Up Agreement[.]" (Mem. Order of Feb. 25, 2005 at 4.) Although PBGC claims that the plaintiffs seek a far broader mandate for the CASB on referral (see Reply Mem. in Support of Mot. for Recons. ("Reply") at 14), the magistrate judge's order restricted the CASB referral to a determination of pending compliance-related issues.

Second, both Cobell I and Cobell II were based on an interpretation of Rule 53, not on a separation of powers argument as advanced by PBGC. Nowhere in its motion does PBGC allege a violation of Rule 53, and Cobell does not mandate the result PBGC seeks. The circumstances presented by the Cobell cases are markedly dissimilar from those here. The referral prescribed by the magistrate judge is not contrary to law and is warranted.

CONCLUSION AND ORDER

The magistrate judge's decision to refer the pending administrative issues to the CASB does not violate the parties' agreements or federal law, and was warranted under the circumstances.  Accordingly, it is hereby

ORDERED that PBGC's motion [77] for reconsideration be, and hereby is, DENIED.  This matter is referred to the CASB for determination of the pending administrative issues related to the parties' compliance with the Wrap Up Agreement.  It is further

ORDERED that if the CASB has not concluded the referral within 90 days of the entry of this Order, the parties shall file with the magistrate judge a joint written status report within 100 days of the entry of this Order.

SIGNED this 31st day of July, 2007.

                                                  /s/
                                   RICHARD W. ROBERTS
                                   United States District Judge